## IN THE UNITED STATES DISTRICT
## COURT FOR THE NORTHERN DISTRICT
## OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| **LINDA GERACE,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.: 13 CV 5965** |
| | ) | |
| **JULIE ANDREWS, SYCAMORE SPEEDWAY** | ) | |
| **& ASSOCIATES, INC. and WINNER'S** | ) | |
| **CIRCLE & ASSOCIATES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## VERIFIED COMPLAINT FOR DISSOLUTION OF THE CORPORATIONS, DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

NOW COMES the Plaintiff, LINDA GERACE, by and through her attorneys, THE DWYER LAW OFFICE and complains of the Defendants, JULIE ANDREWS, SYCAMORE SPEEDWAY & ASSOCIATES, INC. and WINNER'S CIRCLE & ASSOCIATES, INC. as follows:

## JURISDICTION AND VENUE

1.      The District Court has jurisdiction because this action arises, in part, due to a related case pending before Honorable Judge Zagel in this District (case number 13 CV 1521).

2.      In case number 13 CV 1521, the Defendant herein, Julie Andrews, has alleged a RICO conspiracy against numerous family members over the operation of two businesses owned jointly by Plaintiff, Linda Gerace and Defendant Julie Andrews.

3.      Venue is temporarily proper in this Court so long as the RICO claim filed in case number 13 CV 1521 remains pending.

4.      Plaintiff Linda Gerace is represented by other counsel in case number 13 CV 1521, and Plaintiff Linda Gerace filed a motion to dismiss the RICO claim in that case.

5.      In response, Defendant Julie Andrews filed an amended complaint in case number 13 CV 1521.

6.      Plaintiff is of the belief that the RICO claim is meritless and will be dismissed. In the interim, however, Defendant Julie Andrews has taken measures to devalue the corporations at issue as alleged herein.

7.      Both the claims in the RICO case (13 CV 1521) and the claims herein involve a business dispute among family members, and involve the adjudication of business and corporation laws, both of which remain state issues.

8.      Because the RICO claim is pending in federal court, coupled with the actions of Defendant Julie Andrews, which have put the corporations at risk, this Court has supplemental jurisdiction over the subject matter and the parties.

## THE PARTIES

9.      Plaintiff Linda Gerace is an individual residing in DeKalb, Illinois.

10.     Defendant Julie Andrews is an individual residing in Boca Raton, Florida.

11.     The Plaintiff and Defendant are sisters.

12.     On or about July 30, 2010, Plaintiff and Defendant became co-owners of Sycamore Speedway & Associates, Inc. and the Winner's Circle & Associates, Inc. ("The Corporations").

13.     Plaintiff and Defendant each own 50% of the shares of each corporation.

14.     The corporations have been named as Defendants because the corporate entities are necessary parties.

15.     Both corporations co-owned by Plaintiff and Defendant are located and operate exclusively in Kane County, Illinois.

## FACTS COMMON TO ALL COUNTS

16.     Defendant Sycamore Speedway & Associates, Inc. ("Sycamore Speedway") is an Illinois corporation that operates a raceway in Maple Park, Kane County, Illinois.

17.     Defendant Winner's Circle & Associates, Inc. ("Winner's Circle") is an Illinois corporation that operates a bar and grill adjacent to the Sycamore Speedway in Maple Park, Kane County, Illinois.

18.     Both of the aforementioned corporations are necessary parties to this dispute.

19.     Plaintiff and Defendant incorporated Sycamore Speedway and Winner's Circle in July, 2010, when they purchased the assets of Sycamore Speedway, Inc. and Winner's Circle, Inc. form their mother, Carol M. Fabrizius ("Carol"), and their uncle, Robert Oksas.

20.     Plaintiff and Defendant each own 50% of the stock in Sycamore Speedway and Winner's Circle.

21.     Prior to the purchase by Plaintiff and Defendant of the assets of Sycamore Speedway, Inc., Plaintiff had been active in working for her mother and uncle in the family businesses for most of her adult lifetime.

22.     When Plaintiff and Defendant determined to buy the family business from their mother and uncle in 2010, they agreed that Plaintiff, due to her experience and proximity, would be in charge of the operation of the business while Defendant would maintain the corporate bylaws, buy-sell agreements and Secretary of State documents.

23.     Prior to the purchase and until the present, Defendant was a mortgage broker in Florida.

24.     Plaintiff and Defendant's mother, Carol, agreed to accept payment for her portion of the businesses over time evidenced by two unsecured promissory notes payable by Sycamore

Speedway and the Winner's Circle totaling $300,00 amortized over twenty years with a ten year balloon payment (the "Notes").

25.     Over $250,000 is currently owed by Sycamore Speedway and Winner's Circle to Carol under the Notes.

26.     After the closing, Carol agreed to continue working with Plaintiff to assist Plaintiff in the operation of the businesses, and Carol continues to assist Plaintiff in the management and operation of the businesses.

27.     As part of the closing on the Speedway assets, a $50,000 escrow was established that required both Defendant and Plaintiff's signature before it would be released to their uncle, Robert Oksas.

28.     Over Plaintiff's objection, Defendant refused to sign the release of the $50,000 escrow and Robert Oksas brought a lawsuit to collect against Defendant and Plaintiff.

29.     Defendant filed a counterclaim against Oksas, and Plaintiff refused to join Defendant's countersuit against Robert Oksas, and informed Defendant that Mr. Oksas was owed the $50,000 under the July 30, 2010 purchase agreement.

30.     Ultimately, Robert Oksas prevailed in his lawsuit and obtained the release of the $50,000 escrow.

31.     As a result of the disagreement between the Plaintiff and Defendant with respect to their treatment of their uncle, relations between Plaintiff and Defendant became strained and Defendant refused to present to Plaintiff the stock certificates, minutes and buy-sell agreements that had been prepared for Sycamore Speedway and Winner's Circle. See email dated April 13, 2012 attached hereto and incorporated by reference as Exhibit A.

32.     The relationship between Defendant and Plaintiff continued to deteriorate, and in

2013, Defendant refused to respond to the companies' accountant's request that signed corporate

records be provided to her so that she can fulfill her role as the registered agent. See email dated

January 29, 2013, attached hereto and incorporated by reference as Exhibit B.

33.     On or about February 5, 2013, Plaintiff received a letter from Defendant's

attorney accusing Plaintiff, Plaintiff's husband, Plaintiff's children, the companies' accountant

and others of allegedly engaging in a criminal conspiracy in violation of the Racketeer

Influenced and Corrupt Organizations Act. *18 U.S.C. Sec. 1962(c)*("RICO")  See letter dated

February 5, 2013 ("February 5th letter) attached hereto and incorporated by reference as Exhibit

C.

34.     Plaintiff refused Defendant's demands set forth in the February 5th letter that

Plaintiff turn over to Defendant ownership of the companies' as well as pay to Defendant

unlimited and unspecified damages.

35.     On February 27, 2013, Defendant field a RICO complaint in the United States

District Court for the Northern District of Illinois alleging a criminal conspiracy involving

Plaintiff and her entire family (including her daughter Tiffany's boyfriend, Charles Olson) as

well as the companies' accountant, Marianne Anderson.

36.     On April 18, 2013, Plaintiff filed her motion to dismiss the RICO complaint.

37.     Defendant has since filed an amended petition sounding in RICO, and a briefing

schedule has been entered until November of 2013.

38.     After the closing on the purchase of the businesses in July 2010 until the present,

pursuant to her agreement with Defendant, Plaintiff has acted as the de facto President of both

Sycamore Speedway and the Winner's Circle and managed all aspects of the operation of the businesses.

39. After the closing on the purchase of the businesses in July 2010 until April of 2013, Defendant has not been actively engaged in the operation of the businesses.

40. Defendant is well aware that the businesses are seasonal and make nearly all of their revenue during the racing season, being May through October.

41. On or about April 9, 2013, Defendant returned to Illinois determined to seize control of the operation of the businesses.

42. Since April 9, 2013, and without the consent or agreement of Plaintiff, Defendant has disrupted the operation of the businesses in a multitude of ways, including, but not limited to:

    a. Coming onto the grounds and intimidating employees;

    b. Attempting to fire employees;

    c. Attempting to hire new employees;

    d. Changing locks;

    e. Seizing control of the website;

    f. Refusal to sign S Corporation election;

    g. Threats to call the police and have Plaintiff's daughter arrested; and

    h. making slanderous statements about Plaintiff and her family to drivers, vendors and employees.

43. Prior to April 9, 2013, Defendant contacted the corporate bank, misrepresented herself as Plaintiff, and instructed the bank to send all corporate statements to Defendant in Boca Raton, Florida.

44.     Prior to April 9, 2013, Defendant contacted numerous vendors of The Corporations, misrepresented herself as Plaintiff, and instructed those vendors to mail all invoices, statements and accounts payable to Defendant in Boca Raton, Florida.

45.     On May 2, 2013, Defendant went to America Midwest Bank where the corporate monies were held, and caused to be issued a cashier's check for an amount of $44,765.71. See Group Exhibit D, attached hereto and incorporated by reference.

46.     The aforementioned action caused Plaintiff to switch bank accounts in order to maintain the corporate businesses, and caused a substantial shortage of funds available to pay employees and vendors.

47.     To date, the $44,765.71 remains missing and unaccounted for.

48.     Despite repeated demands by Plaintiff to Defendant to return the money, Defendant has refused to do so.

49.     The adversarial nature of Defendant's interaction with Plaintiff is aptly demonstrated in her 'response' to Plaintiffs email of April 22, 2013, where Defendant simply supplies caustic 'parenthetical' spliced within Plaintiff's original email. See email dated April 24, 2013 attached hereto and incorporated by reference as Exhibit E.

50.     On Wednesday, May 1, 2013, Plaintiff attempted to discuss with Defendant the importance of keeping things operating as normal while the parties attempted to resolve their dispute. In response, Defendant stated that she planned to attend the opening of the racing season on the Saturday, May 4th, and insisted that she would be operating her one-half of the business. Defendant further stated to Plaintiff that she would be firing one-half of the existing employees and hiring her own employees who would take their orders from Defendant.

## COUNT I
## STATUTORY REORGANIZATION, ACCOUNTING AND BUYOUT
## OF THE CORPORATION

51.    Sycamore Speedway & Associates, Inc. and Winner's Circle & Associates, Inc. ("The Corporations") were organized by the Plaintiff and Defendant for the purpose of engaging in business in Kane County, Illinois.

52.    The Corporations remain valid entities within the State of Illinois and are presently doing business in Kane County, Illinois.

53.    Under the terms of the July 30, 2010 agreement between the Plaintiff and Defendant, Defendant has operated The Corporations in that Plaintiff has performed all of the necessary business functions, including, but not limited to, accounting, hiring personnel, selection of vendors, general maintenance of the facilities, and all other duties and obligations ancillary to running a part-time racetrack operation.

54.    The owners of The Corporations are deadlocked as to how the business should be operated.

55.    Since May of 2013, the Defendant has repeatedly come to the businesses, during the course of operation, and

    a.    Attempted to hire and fire personnel;

    b.    Interrogated employees as to the operation of the businesses;

    c.    Repeatedly told anyone who would listen that Plaintiff is a "thief" and has repeatedly defamed Plaintiff, Plaintiff's family and the trusted employees of the racetrack;

    d.    Diverted $44,765.71 in corporate assets to unknown accounts in contravention of the law; and

    e.    Otherwise disrupted the organization and operation of the business.

56.    Defendant, in February of 2013, threatened to file suit against the Plaintiff.

57.     In response, Plaintiff initiated a buyout offer for Defendant's shares on at least two separate occasions.

58.     Defendant has refused said offers, and has failed to pursue any good-faith resolution of the instant controversy.

59.     805 ILCS 5/12.50(a)(3) provides for reorganization on a Court ordered buyout of a corporation in the event that the corporation can no longer be conducted to the general advantage and benefit of the shareholders.

60.     Plaintiff and Defendant are both 50% shareholders, and both parties are in a deadlock as to how The Corporations at issue should be operated.

61.     805 ILCS 5/12.56 provides:

Section 12.56. Shareholder remedies: non-public corporations.

(a)     In an action by a shareholder in a corporation that has no shares listed on a national securities exchange or regularly traded in a market maintained by one or more members of a national or affiliated securities association, the Circuit Court may order one or more of the remedies listed in subsection (b) if it is established that:

(1)     The directors are deadlocked, whether because of even division in the number of directors or because of greater than majority voting requirements in the articles of incorporation or the by-laws or otherwise, in the management of the corporate affairs; the shareholders are unable to break the deadlock; and either irreparable injury to the corporation is thereby caused or threatened or the business of the corporation can no longer be conducted to the general advantage of the shareholders; or

*     *     *

(b)     The relief which the court may order in an action under subsection (a) includes but is not limited to the following:

(1)     The performance, prohibition, alteration, or
        setting aside of any action of the corporation or of its
        shareholders, directors, or officers of or any other party
        to the proceedings;

(2)     The cancellation or alteration of any provision
        in the corporation's articles of incorporation or by-
        laws;

(3)     The removal from office of any director or officer;

(4)     The appointment of any individual as a director or
        officer;

(5)     An accounting with respect to any matter in dispute;

(6)     The appointment of a custodian to manage the
        business and affairs of the corporation to serve for the term and under
        the conditions prescribed by the court;

(7)     The appointment of a provisional director to serve for
        the term and under the conditions prescribed by the court;

(8)     The submission of the dispute to mediation or
        other forms of non-binding alternative dispute resolution;

(9)     The payment of dividends;

62.     Plaintiff and Defendant are at a standstill in that neither party can disassociate
themselves from The Corporations in an equitable manner.

63.     Plaintiff has attempted to resolve the matter both amicably and rationally, but in
response, the Defendant has not authorized any good faith offer, but instead continues to lodge
allegations of theft towards the Plaintiff, Plaintiff's family, and close friends who are employed
by The Corporations.

64.     Because the parties cannot agree on a buyout purchase plan, The Corporations
should be reorganized, their assets distributed equitably, with a set-off to Plaintiff for her efforts

in operating The Corporations, along with a set-off for the missing corporate funds totaling $44,765.71.

65.     In the alternative, the Court may order any other equitable remedy envisioned by 805 ILCS 5/12.56.

WHEREFORE, Plaintiff, LINDA GERACE, prays that the Court adjudicate the issues raised herein, either reorganize The Corporations or order a purchase thereof, with The Corporations value to be approved by an objective third-party, or institute any other relief the Court deems just and equitable pursuant to 805 ILCS 5/12.56.

**COUNT II**
**BREACH OF CONTRACT**

66.     At the time the Plaintiff and Defendant purchased the corporate entities, in July of 2010, the parties agreed that Plaintiff would operate the business and Defendant would maintain the corporate books.

67.     Defendant agreed to prepare, or cause to be prepared, the corporate by-laws and minutes of The Corporations at issue.

68.     Plaintiff did not need these documents initially, but merely performed in accordance with the agreement of the parties in July of 2010, and continued to run the racetrack on a daily basis.

69.     Since Defendant has sought to seek control of the corporate entities, Plaintiff first requested and then demanded those documents from the Defendant, but the Defendant has refused to tender the same.

70.     At all times relevant hereto, there was a valid and binding agreement between the Plaintiff and Defendant.

71.     Specifically, Plaintiff agreed to operate the businesses and Defendant agreed to prepare the necessary corporate paperwork.

72.     There was an offer, and there was acceptance by both the Plaintiff and the Defendant.

73.     At all times relevant hereto, there was ample consideration for the agreement made between the Plaintiff and Defendant.  Both Plaintiff and Defendant receive $1,635.00 from the corporate entities monthly in order to pay the notes used to purchase The Corporations.

74.     Defendant has breached her obligations to prepare, produce and otherwise assemble the necessary corporate records, which have caused the Plaintiff, as well as The Corporations, damage.

75.     Defendant's refusal to produce the corporate documents has cost the Plaintiff substantial time, money and expense.

76.     Notwithstanding Plaintiff's repeated attempts to secure the necessary corporate paperwork, Defendant has refused to tender said papers.

77.     Defendant's breach of the contract has caused Plaintiff both harm and damage.

WHEREFORE, Plaintiff, LINDA GERACE, prays that the Court adjudicate the issues raised herein, find in favor for Plaintiff, declare that Defendant has breached the contract between Plaintiff and Defendant, award compensatory damages, and issue whatever relief this Court finds just and equitable.

## COUNT III
## CORPORATE ROLES

78.     Defendant and Plaintiff agreed at the time of the purchase of the businesses in 2010 that Plaintiff would act as President of both Sycamore Speedway and Winner's Circle and

would have full and complete control to maintain the normal business operations of both businesses, and that Defendant would serve as Secretary to maintain the corporate books.

79.     From July of 2010, Defendant has resided and worked in Boca Raton, Florida.

80.     As part of her role as Secretary, Defendant agreed to have prepared the corporate by-laws and minutes reflecting Plaintiff's position as President and Defendant's position as Secretary of both Sycamore Speedway and Winner's Circle.

81.     Presently, however, the Illinois Secretary of State records state that Plaintiff is the President of Sycamore Speedway and the Secretary of the Winner's Circle.

82.     In breach of the agreement, Defendant has refused to submit to Plaintiff the corporate by-laws and corporate minutes reflecting Plaintiff's position as President and Defendant's position as Secretary of both Sycamore Speedway and Winner's Circle.

83.     Under Illinois law, corporate officers exercising functions of their offices under color of claim of authority, even if not lawfully elected, are nevertheless de facto officers.

84.     Defendant did not object to Plaintiff's *de facto* actions as President of Sycamore Speedway and the Winner's Circle until nearly two and one-half years after Plaintiff assumed the role as *de facto* President of both businesses.

85.     It remains undisputed that, with the assistance of her mother, Carol, Plaintiff has operated The Corporations on a daily basis including, but not limited to, personnel decisions, accounting, maintenance of the facilities, scheduling of race drivers, and all other daily functions of The Corporations.

86.     Without a declaration of the shareholders responsibilities to The Corporations, and the role of each shareholder, The Corporations will continue to flounder.

WHEREFORE, Plaintiff, LINDA GERACE, prays that the Court enter judgment declaring that in conformance with the parties' agreement, in conjunction with the course of conduct of the parties over the 2 ½ year period, Plaintiff is confirmed as the President in charge of the management of the operations of Sycamore Speedway and the Winner's Circle, and that Defendant is confirmed as the Secretary charged with maintaining the corporate records.

## COUNT IV
## INJUNCTION TO MAINTAIN SATUS QUO

87.     Defendant's attempt to unlawfully seize control of the businesses through intimidation, misrepresentation, conversion of corporate assets and threatening to hire and fire 50% of the personnel of The Corporations is jeopardizing the relationship between The Corporations and its employees, vendors, drivers and customers, which has substantially impaired the ability of the businesses to successfully operate.

88.     Defendant's attempt to unlawfully seize control of the businesses at the beginning of the 2013 racing season has irreparably harmed the good-will of Sycamore Speedway and the Winner's Circle and may ultimately cause the failure of The Corporations.

89.     Defendant's misrepresentations to the corporate bank, and her subsequent conversion of over $44,765.71, had impaired the Racetrack's ability to pay its vendors.

90.     Defendant's continued publication of this family business dispute has adversely impacted the operations of the racetrack facility.

91.     During race season, over 50 people are employed at the Sycamore Speedway and Winner's Circle, and Defendant's attempt to unlawfully seize control of the businesses puts at risk the livelihood of these employees.

92.     Defendant's intent to "run her 50%" and hire one-half of the employees remains indicative of Defendant's fundamental misunderstanding of the business model.

93.     Plaintiff has a protectable interest and an ascertainable right to relief.

94.     Plaintiff has a likelihood of success on the merits, and has brought forward a fair question as to the rights and obligations of the parties.

95.     The Plaintiff does not have an equitable remedy at law to address Defendant's unlawful actions as damages alone cannot remedy the imminent destruction of a family business that has operated for nearly 50 years, and the permanent loss of the incumbent jobs associated with the businesses.

WHEREFORE, Plaintiff, LINDA GERACE, prays that the Court enter an injunction maintaining the status quo and barring Defendant from interfering with Plaintiff's management of the operations of Sycamore Speedway and the Winner's Circle, and until further Order of this Court (i)  enjoin Defendant from directly contacting the employees, vendors, drivers or customers of the businesses; (ii)  enjoin Defendant from removing or transferring any funds from the corporate bank account; (iii) enjoin Defendant from changing locks on the properties where the businesses operate; (iv) enjoin Defendant from hiring or firing employees, vendors or contractors of the businesses; (v) enjoin Defendant from interfering with the businesses web site; and (vi)granting such other relief as this Court deems just and equitable.

## COUNT V
## CONVERSION

96.     When Defendant removed over $44,765.71 in corporate assets from the bank, Defendant's act constituted a conversion.

97.     At all times relevant hereto, Defendant had no authority over the corporate bank account.

98.     From July 30, 2010 until early in 2013, Defendant was provided with financial statements commensurate with established business practices within the industry.

99.     The money removed by the Defendant belonged to The Corporations, and Plaintiff is the President of those corporations.

100.    From July 30, 2010 until August of 2013, Plaintiff, as President of the corporations, had control, dominion and responsibility over the funds held in the bank by The Corporations.

101.    Defendant's unauthorized removal of the corporate funds was unlawful.

102.    At all times relevant hereto, as a 50% shareholder in The Corporations, Defendant is and was entitled to an accounting of corporate funds.

103.    Defendant, as a 50% shareholder in The Corporations, does not have the remedy of converting corporate funds because Defendant is of the opinion that Plaintiff is acting inappropriately.

104.    Plaintiff, as President of The Corporations, and the person who pays the vendors of The Corporations, has a right to all of the corporate funds, including those taken by the Defendant.

105.    Plaintiff has demanded that Defendant return the corporate funds, and Defendant has refused to do so.

106.    Defendant's conversion of the corporate property has injured The Corporations as well as both shareholders.

WHEREFORE, Plaintiff, LINDA GERACE, prays that the Court adjudicate the issues raised herein, find in favor of the Plaintiff, and Order that the Defendant, JULIE ANDREWS, return the $44,765.71 to The Corporations immediately, along with whatever other relief this

Court deems just and proper.  In the alternative, if the Court finds that the converted funds have

been wasted, then set-off the amount taken by Defendant with respect to any funds owed to her

pursuant to a dissolution, buy-out or Court-Ordered valuation.


Plaintiff, Linda Gerace

By:    /s/ Timothy P. Dwyer
        Dwyer Law Office
        240 West River Drive
        St. Charles, IL  60174
        (630) 513-0066
        Attorney:  06203199
        Email:  Mr.tdwyer@sbcglobal.net

## VERIFICATION

Under penalties of perjury, as provided by law, pursuant to 735 ILCS 5/1-109 of the

Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in the

foregoing instrument are true and correct except as to matters therein stated to be on information

and belief, and as to such matters, the undersigned certifies as aforesaid that she verily believes

the same to be true.

_Linda Gerace_
Linda Gerace

Dwyer Law Office
Timothy P. Dwyer
240 West River Drive
St. Charles, IL 60174
(630) 513-0066
Attorney: 06203199
Email: Mr.tdwyer@sbcglobal.net